## IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY MARYLAND

| | |
|---|---|
| CANDACE E. ALSTON<br>10012 Cedarhollow Lane<br>Largo, MD 20774<br><br>     Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION<br>SERVICES, LLC<br>Serve:  CSC-Lawyers Incorporating<br>       Service Company<br>       7 St. Paul Street, Suite 1660<br>       Baltimore, MD 21202<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   CIVIL ACTION NO. _CAL13-07129_<br>)   **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### COMPLAINT

COMES NOW the Plaintiff, Candace E. Alston, (hereafter the "Plaintiff") and for her

complaint against the Defendant Equifax Information Services, Llc. ("Equifax") alleges as

follows:

### PRELIMINARY STATEMENT

1.    This is an action for actual, statutory and punitive damages, costs and attorney's

fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.* ("FCRA"), and

the Miscellaneous Consumer Protection Provisions, Md. Code §14-1201 *et seq.* (MCPP).

### PARTIES

2.    The plaintiff is a natural person and resides in the State of Maryland. She is a

"consumer" as defined by the FCRA, 15 U.S.C. §1681a(c) and MCPP, Md. Code §14-1201(c).

3.    Upon information and belief, Equifax, is a corporation authorized to do business

in the State of Maryland.

1

4.     Upon information and belief, Equifax is a "consumer reporting agency," as defined in 15 U.S.C. §1681a(f) and a "person" within the meaning of the MCPP, Md. Code §14-1201(j). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

5.     Upon information and belief, Equifax disburses such consumer reports to third parties under contract for monetary compensation.

## FACTS

6.     Ms. Alston obtained her Equifax credit report on June 30, 2011 and learned that Equifax was erroneously reporting a mortgage delinquency and charged-off credit card.

7.     Specifically, the Defendant was reporting a Wells Fargo mortgage account as:

      a.     being 120+ days past due;

      b.     having a past due balance of $4,057

      c.     having a balance of $102,077;

      d.     receiving the last payment on 01/2011; and

      e.     initially becoming delinquent on 03/2011.

8.     The Defendant was reporting a Discover credit card account as:

      a.     charged off as bad debt;

      b.     having a past due balance of $10,090;

      c.     having a credit limit of $9,000;

      d.     an authorized user account; and

      e.     closed in 01/2008.

### *The Wells Fargo Account*

9.    This credit reporting was inaccurate because Plaintiff was paying the person—Monarch Bank—entitled to receive payment in accordance with the law.

10.    Additionally, Plaintiff apprised Wells Fargo that the promissory note demonstrated that Wells Fargo was not entitled to receive payment.

11.    Ms. Alston submitted an online dispute regarding the inaccurate Wells Fargo mortgage account to Equifax on July 12, 2011.

12.    On August 11, 2011 Equifax responded to Plaintiff's dispute letter by stating the "disputed information has been verified and/or updated" with the following changes:

    a.    As a collection account.

    b.    150-179 days past due as of July 2011.

    c.    The date of first delinquency as 02/2011.

13.    On or around August 22, 2011 Ms. Alston followed up with a request for a description of the procedure Equifax employed to investigate her dispute. Ms. Alston enclosed a promissory note payable to Monarch Bank and endorsed to Bank of America, an August mortgage statement from Monarch Bank and her mortgage payment to Monarch Bank. Ms. Alston further stated that either Monarch Bank or Bank of America is entitled to receive payment but not Wells Fargo. She concluded by stating Equifax has a duty to report accurate information and Equifax should seek documentation from Wells Fargo supporting its claim or Equifax should delete the account from the credit report.

14.    After receiving no response from Equifax for her August 22, 2011 correspondence Ms. Alston forwarded another letter repeating her request.

15.    Equifax issued a generic, form letter on November 9, 2011 that purported to provide a description of the investigation process. The letter conceded that Equifax does not perform an investigation but forwards the dispute for investigation by the furnisher.

16.    Ms. Alston submitted another dispute to Equifax on or about Nov 21, 2011. In this dispute Ms. Alston provided detailed information explaining that Wells Fargo was not entitled to receive her mortgage payments. She further explained that Wells Fargo is reporting the month of August as paid but has not adjusted the past due balance. Ms. Alston also enclosed a copy of her August payment to Monarch Bank.

17.    On December 21, 2011 Equifax responded to Plaintiff's dispute letter by stating the "prior paying history on this account has been updated" with the following changes:

     a.    120 days past due and transferred or sold;

     b.    Account closed on 11/2011;

     c.    180 or more days past due as of 10/2011;

     d.    180 or more days past due as of 09/2011; and

     e.    Not late in 08/2011.

18.    On or around February 28, 2012 Ms. Alston submitted yet another dispute to Equifax. This time Ms. Alston included substantially more detailed information in the dispute and enclosed several documents, which included several Monarch Mortgage Statements, a copy of the Promissory Note, Mortgage Interest Statement for 2011 from Monarch Bank, Loan Amortization Schedule, and Equifax credit reports from February 24, 2012 and August 11, 2011.

19.     Equifax issued the results of its reinvestigation in correspondence dated March 27, 2012. Despite the documents submitted by Plaintiff in her dispute, Equifax still reported that it has "verified that this item belongs to you" in the same status of over 120 days past due.

20.     Ms. Alston quickly followed up with a letter requesting *an actual* description of the investigation process employed by Equifax. She explained that she did not want a generic statement that Equifax "review[s] and consider[s] any relevant information you submitted regarding the nature of your dispute" but a description of how Equifax utilized the documents provided in her dispute.

21.     Rather than provide a description of its investigation as requested, Equifax purported to have conducted another reinvestigation that again resulted in the Wells Fargo mortgage account being verified as belonging to Plaintiff.

22.     On or around May 29, 2012 Ms. Alston responded with another letter repeating her request for a description of the investigation process.

23.     Equifax issued a letter on June 4, 2012 purporting to provide an answer to Plaintiff's question regarding the investigation process. Despite Plaintiff's request for the actual investigation used in her dispute, Equifax provided a general statement of how investigations are generally processed and included the statement—"we first review and consider any relevant information you submitted regarding the nature of your response"—that Plaintiff specifically identified in her request as a generic statement that is not responsive to her request for an actual investigation of her dispute.

24.     Although Ms. Alston only requested a description of the prior reinvestigation, Equifax provided another reinvestigation dated June 15, 2012 that verified the Wells Fargo mortgage account as belonging to Plaintiff.

25.     Equifax's foregoing reportings of the Wells Fargo delinquent mortgage account are false. Ms. Alston has made each and every monthly mortgage payment to Monarch Bank and had no legal duty to pay Wells Fargo.

26.     Equifax has knowledge that:

    a.     The promissory note was endorsed to Bank of America;

    b.     Monarch Bank was sending Mortgage Statements to Plaintiff;

    c.     Ms. Alston was making mortgage payments to Monarch Bank;

    d.     Wells Fargo credited the month of August as paid despite that Plaintiff paid Monarch Bank for the August mortgage payment.

    e.     Monarch issued a mortgage interest statement that reflected Ms. Alston made twelve mortgage payments to Monarch in 2011.

    f.     **Monarch was reporting to the Defendant that Ms. Alston was current for the same time period that Wells Fargo was reporting Ms. Alston delinquent.**

    g.     **Both Monarch and Wells Fargo were reporting mortgage accounts to the Defendant as being opened in November 2010, as having an original balance of $102,212 and as having the same principal and interest mortgage payment amount.**

27.     Equifax had actual knowledge that the Wells Fargo mortgage account was inaccurate and deliberately chose to ignore and permit reporting of the inaccurate account.

28.     Ms. Alston struggled with her credit during the time period related to the dispute in this action. Based upon information and belief, Equifax provided inaccurate credit reports containing the Wells Fargo mortgage account to Capital One on August 29, 2011,

6

October 31, 2011 and December 17, 2011; Bank of America on October 31, 2011; SunTrust on December 19, 2011; Virginia Heritage Bank on January 30, 2012; and 1ST Step Financial Services on February 7, 2012.

### The Discover Card Account

29.     This credit reporting was inaccurate because Plaintiff was not a holder of a Discover credit card account.

30.     Additionally, Discover agreed the account should be removed from Plaintiff's credit report after the Plaintiff apprised Discover of the erroneous reporting of the account in March 2011.

31.     Ms. Alston was surprised to see the Discover account still being reported because Ms. Alston had previously disputed the account in March 2011 and was sure it would be deleted.

32.     Ms. Alston submitted another dispute, via Equifax's website, regarding the inaccurate Discover credit card account on July 12, 2011.

33.     On August 11, 2011 Equifax responded to Plaintiff's dispute with its reinvestigation results, which modified the account from an authorized user to "Association Terminated." Nevertheless, Equifax concluded that "Equifax verified that this item belongs to [Plaintiff]."

34.     Transunion was also reporting the Discover account to Plaintiff's credit report but Transunion immediately deleted the account after Plaintiff disputed the account.

35.     On or around August 22, 2011 Ms. Alston submitted correspondence to Equifax requesting the description Equifax used to verify the account as hers. Plaintiff also pointed out that Transunion deleted the account and enclosed the Transunion report indicating the account

was deleted. Ms. Alston further announced that Discover has acknowledged the account does not belong to her. She concluded by stating that Equifax needs to conduct a comprehensive investigation to determine the accurateness of its reporting of the subject account.

36.     Equifax did not provide Ms. Alston with a description of the investigation and continued to report the account in the same negative manner.

37.     Thereafter, Ms. Alston contacted Discover to complain about the reporting of the account. In return Discover provided Ms. Alston with a letter indicating that Discover had "updated her Credit Bureau file to reflect [Discover] ha[s] removed [her] name" and that change should take effect within 45 days.

38.     After allowing 45 days to elapse, Ms. Alston checked her credit report to see if Equifax was still reporting the account. To her dismay Equifax was still reporting the account in the exact same negative fashion.

39.     Ms. Alston enclosed the Discover letter with a dispute letter she sent to Equifax on or about February 6, 2012.

40.     Equifax issued its reinvestigation results on March 3, 2012 indicating that the Discover account has been deleted from the credit file.

41.     Equifax should have deleted the Discover account after Ms. Alston's initial dispute in March 2011. If Equifax had performed a reasonable investigation then Equifax would have deleted the account following Ms. Alston's dispute in March 2011.

42.     Equifax had actual knowledge that the Discover account did not belong to Ms. Alston. Equifax acknowledged that Ms. Alston was not an authorized user of the account with its modification of the account information from an authorized user to "Association

8

Terminated." In reckless disregard for Plaintiff's consumer rights Equifax continued to report the account as hers.

43.     Equifax had actual knowledge that the Discover account was inaccurate and deliberately chose to ignore and permit reporting of the inaccurate account.

44.     Ms. Alston struggled with her credit during the time period related to the dispute in this action. Based upon information and belief, Equifax provided inaccurate credit reports containing the Discover account to Capital One on August 29, 2011, October 31, 2011 and December 17, 2011; Bank of America on October 31, 2011; SunTrust on December 19, 2011; Virginia Heritage Bank on January 30, 2012; and 1ST Step Financial Services on February 7, 2012.

## COUNT ONE: VIOLATION OF FCRA

45.     Plaintiff realleges and incorporates paragraphs 1 through 44 above as if fully set out herein.

46.     Equifax violated 15 U.S.C. §1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the Plaintiff's credit reports and credit files it published and maintained concerning the Plaintiff.

47.     Equifax violated 15 U.S.C. §1681i(a)(1) on multiple occasions by failing to conduct a reasonable investigation to determine whether the disputed information is inaccurate and record the current status of the disputed information or delete the item from the Plaintiff's credit files.

48.     Equifax violated 15 U.S.C. §1681i(a)(2) on multiple occasions by failing to provide Wells Fargo with all the relevant information regarding the Plaintiff's dispute.

49.     Equifax violated 15 U.S.C. §1681i(a)(4) on multiple occasions by failing to review and consider all relevant information submitted by the Plaintiff.

50.     Equifax violated 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

51.     Equifax violated 15 U.S.C. §1681i(a)(7) by failing to provide a description of the reinvestigation within 15 days of receiving Plaintiff's requests for such descriptions.

52.     As a result of Equifax's foregoing violations of 15 U.S.C. §§1681e(b) and 1681i(a)(1),(2),(4),(5)(A)&(7), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

53.     The violations by Equifax were willful, rendering Equifax liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. Punitive damages are required to change Equifax's reckless disregard for the rights of consumers to obtain accuracy in their credit reports and remove erroneous data. In the alternative, Equifax was negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

54.     Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT TWO: VIOLATIONS OF MCPP

55.     Plaintiff realleges and incorporates paragraphs 1 through 54 above as if fully set out herein.

56.     Defendant Equifax violated Md. Code §14-1208(b) by failing to conduct a reasonable reinvestigations and failing to delete the inaccurate Wells Fargo account. Defendant also violated §14-1208(a) by failing to respond within seven (7) days.

57.     As a result of conduct, actions and inactions of Equifax, the Plaintiff suffered actual damages including without limitation, by example only and as described herein by Plaintiff: out-of-pocket expenses,     credit repair costs, loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

58.     Equifax's conduct, actions and inactions were willful, rendering Equifax liable for punitive damages in an amount to be determined by the Court pursuant to Md. Code §14-1213(a). In the alternative, Equifax was negligent, entitling the Plaintiff to recover under Md. Code §14-1213(b).

59.     The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from Equifax in an amount to be determined by the Court pursuant to Md. Code §14-1213(a) and §14-1213(b).

WHEREFORE, your Plaintiff demands judgment for actual, statutory and punitive damages against Equifax; for her attorneys' fees and costs; for prejudgment and post-judgment interest at the legal rate, and such other relief as the Court deems just, equitable and proper.

**TRIAL BY JURY IS DEMANDED.**

**CANDACE E. ALSTON**

By _____
Candace E. Alston
10012 Cedarhollow Ln
Largo, MD 20774
(301) 350-5780
*Pro Se Plaintiff*



CERTIFIED MAIL™

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7002 2030 0003 5049 9556

U.S. POSTAGE
PAID
UPPER MARLBORO, MD
20772
MAR 20 '13
AMOUNT
$6.51
0002449D-10

21202

1000

CSC-Lawyers Incorporating
Service Company
7 Saint Paul Street, Suite 1660
Baltimore, Maryland 21202

Thomas Alston
1001A Cedarhollow Ln
Largo, MD 20774

21202814407