UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CANDACE E. ALSTON,

    Plaintiff,

v.

EQUIFAX INFORMATION SERVICES, LLC,

    Defendant.

Civil Action No. TDC-13-1230

**MEMORANDUM OPINION**

Before the Court in this Fair Credit Reporting Act ("FCRA") case is Plaintiff Candace Alston's Motion for a Temporary Restraining Order and Preliminary Injunction. ECF No. 71. Alston seeks to have this Court enjoin Defendant Equifax Information Services, LLC ("Equifax") from reporting her Wells Fargo mortgage account as 120 days past due. In a July 25, 2014 Order, this Court denied the temporary restraining order ("TRO") and deferred decision on the preliminary injunction pending briefing by the parties. ECF No. 73. On November 3, 2014, the Court heard oral argument on the Motion. The remainder of the Motion is now ripe for disposition. For the reasons outlined below, the Motion for a Preliminary Injunction is DENIED.

**BACKGROUND**

In November 2010, Alston obtained a mortgage from Monarch Bank that was subsequently sold to Wells Fargo Bank. *See* Am. Compl. ¶¶ 9-10, 26(g), ECF No. 29. The terms of the loan required her to make monthly payments of approximately $812. Opp'n, Ex. A.1, ECF No. 74-2. On June 30, 2011, Alston ordered her credit report from Equifax and

discovered that it was "erroneously reporting" that she had not made a mortgage payment since January 2011 and that she was therefore $4,057 in arrears. Am. Compl. ¶¶ 6-7. On July 12, 2011, Alston filed an online dispute with Equifax about the report of a delinquent mortgage. *Id.* ¶ 11. On August 11, 2011, Equifax responded and informed Alston that the "disputed information ha[d] been verified and/or updated." *Id.* ¶ 12.

At some point in August 2011, "Wells Fargo and Monarch Bank represented" to Alston that she was now $6,492.24 in arrears on her mortgage. Mot. at 1. On or before August 22, 2011, Alston sent a cashier's check for $6,492.24 payable to Monarch Bank to bring the account current. *Id.* at 1-2. Monarch endorsed the check and forwarded it to Wells Fargo. *Id.* at 2. According to Alston, Wells Fargo then instructed Equifax to report the mortgage account as "Current with no past due balance as of August 2011." *Id.*

On or around August 22, 2014, Alston asked Equifax to forward her a copy of its dispute resolution procedure. Am. Compl. ¶ 13. She included in that correspondence a copy of the $6,492.24 payment she sent to Monarch. *Id.* At some point, after receiving no response to her letter, Alston sent Equifax a second letter repeating her request for a copy of its dispute resolution procedure. *Id.* ¶ 14. On November 9, 2011, Equifax sent Alston a "generic, form letter" explaining that Equifax "does not perform [its own] investigation but forwards the dispute for investigation by the furnisher," in this case, Wells Fargo. *Id.* ¶ 15.

In November 2011, the Wells Fargo mortgage was transferred or sold and the account closed. *See* Mot., Ex. 1. That month, Alston again ordered her Equifax credit report and saw that Equifax was still reporting her mortgage as in arrears despite her August 2011 payment. Am. Compl. ¶ 16. As a result, on November 21, 2011, Alston submitted a second dispute letter to Equifax, enclosing with that correspondence another copy of her $6,492.24 cashier's check to

Monarch. *Id.* In a letter dated December 21, 2011, Equifax informed Alston that it had updated her credit report to reflect that her mortgage account (1) was not late in August 2011; (2) was 180 or more days past due in September 2011; (3) was 180 or more days past due in October 2011; (4) was closed in November 2011; and (5) was "120 days past due and transferred or sold." *Id.* ¶¶ 17(a)-(e).

On February 24, 2012, Alston ordered a third credit report from Equifax. *Id.* ¶ 18. That report continued to list her mortgage account as 120+ days late for September and October 2011. Mot. at 2. On or about February 28, 2012, Alston resubmitted her dispute to Equifax, this time providing "substantially more detailed information" about her payment history, including several mortgage statements from Monarch. Am. Compl. ¶ 18. In a letter dated March 27, 2012, Equifax informed Alston that it had verified the accuracy of the report. *Id.* ¶ 19. Alston "quickly" responded with a letter reiterating her request for a description of Equifax's investigation process and emphasizing that she did not want a "generic" response, but rather one explaining exactly how Equifax had resolved her particular disputes. *Id.* ¶ 20. In response, Equifax again investigated the mortgage debt and reported to Alston that the account information had been "verified." *Id.* ¶ 21. On or near May 29, 2012, Alston reiterated her request for a specific description of Equifax's investigation policy. *Id.* ¶ 22. On June 4, 2012, Equifax provided Alston with a "general statement" of its investigations procedure. *Id.* ¶ 23. In a letter dated June 15, 2012, Equifax informed her that a further reinvestigation had verified that the Wells Fargo mortgage account belonged to Alston. *Id.* ¶ 24.

On March 14, 2013, Alston filed suit in the Circuit Court for Prince George's County alleging that Equifax violated the FCRA and certain parts of Maryland's Miscellaneous Consumer Protection Provisions, Md. Code, Commercial Law, § 14-1201, *et seq.*, based on its

reporting of her mortgage account and what she characterized as its inadequate investigative procedures.[1] The case was removed to this Court on April 25, 2013.

As of June 2014, Equifax was reporting the "status" of the mortgage account as "[o]ver 120 days past due" with "no late payments for [A]ugust, [S]eptember, [and] [O]ctober 2011." Mot. at 2, Ex. 1. It was also reporting that the account had been "transferred/sold" in November 2011 and therefore that it had a balance of $0 and a past due amount of $0. Id.

On July 24, 2014, Alston filed a Motion for Temporary Restraining Order and Preliminary Injunction asking this Court to "enjoin the Defendant from reporting inaccurate information to Plaintiff's credit report." Mot. at 1. Specifically, Alston seeks to enjoin Equifax from reporting that her mortgage was "over 120 days late." Id. at 4. According to Alston, her Motion is prompted by the fact that she "has identified a property that she would like to purchase." Id. at 2. She asserts that the allegedly inaccurate information on her credit report "will prevent [her] from obtaining a loan to purchase th[at] property." Id. at 3. Alston concludes that "[o]nce another buyer purchases the property, [she] will never have the same opportunity to buy that property again." Id.

On July 25, 2014, this Court denied Alston's motion for a TRO because she had not satisfactorily established the possibility of imminent harm and deferred her motion for a preliminary injunction pending additional briefing by the parties. ECF No. 73. In its August 1, 2014 Response to Alston's Motion, Equifax asserts that injunctive relief is not available to private litigants under the FCRA and that the mortgage account information is accurate. ECF No. 74. On August 7, 2014, Alston filed a Reply to Equifax's response. ECF No. 77.

---

[1] The Complaint also makes a claim for inaccurate reporting in regard to a Discover account. See First Am. Compl. ¶¶ 29-44. On November 26, 2013, the Court (Grimm, J.) denied Alston's Motion for Partial Summary Judgment relating to that issue. ECF No. 41.

## DISCUSSION

### I. Availability of Injunctive Relief Under the FCRA

In opposition to the Motion for a Preliminary Injunction, Equifax asserts that injunctive relief is unavailable to private plaintiffs under the FCRA. Opp'n at 3-5. The FCRA provides that a consumer can bring a claim "to enforce any liability created under" the FCRA. 15 U.S.C. § 1681(p). Elsewhere in the FCRA, civil liability is discussed in terms of damages and attorney's fees, with no mention of injunctive relief. See 15 U.S.C. §§ 1861(n)-(o). The United States Court of Appeals for the Fifth Circuit has held that this omission of injunctive relief in the discussion of civil liability "is significant because the Act elsewhere expressly grants the power to obtain injunctive relief to the [Federal Trade Commission ("FTC")]." *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 268 (5th Cir. 2000). The *Washington* court accordingly held that "the affirmative grant of power to the FTC to pursue injunctive relief, coupled with the absence of a similar grant to private litigants when they are expressly granted the right to obtain damages and other relief, persuasively demonstrates that Congress vested the power to obtain injunctive relief solely with the FTC." *Id.*

Thus far, the Fifth Circuit is the only circuit court to decide whether private plaintiffs can obtain injunctive relief under the FCRA. However, in *Beaudry v. TeleCheck Services, Inc.*, 579 F.3d 702 (6th Cir. 2009), the United States Court of Appeals for the Sixth Circuit, while expressly declining to decide this issue, noted that although "*Washington* may be right," the Fifth Circuit's conclusion was "far from self-evident." *Id.* at 709. The Sixth Circuit noted that based on Supreme Court precedent, a district court "should start with the assumption that, in actions over which it has jurisdiction, it has authority to issue injunctive relief" and that in "the absence of the 'clearest command to the contrary from Congress,' [a] plaintiff may seek injunctive

relief." *Id.* (quoting *Califano v. Yamasaki*, 442 U.S. 682, 705 (1979)). Because it did not need to decide this question in *Beaudry*, the court left the resolution of the question "for another day." *Id.*

Both before *Beaudry* and after it, the vast majority of district courts, including in this district and within the Fourth Circuit, have followed the Fifth Circuit's holding in *Washington*. *See, e.g., Eseni v. RIMSI Corp.*, No. AW-07-2384 at 7-8 (D. Md. Dec. 6, 2007) (attached as an Exhibit to Trans Union's Opp'n to Mot. for Prelim. Inj., *Alston v. Trans Union, et. al.*, TDC-14-1180, ECF No. 52-3); *Domonoske v. Bank of America, N.A.*, 705 F. Supp. 2d 515, 518 (W.D. Va. 2010); *Bumgardner v. Lite Cellular, Inc.*, 996 F. Supp. 525, 527 (E.D. Va. 1998); *Bleynat v. Trans Union, LLC*, No. 1:11cv218, 2012 WL 2576646 at *2-3 (W.D.N.C. July 3, 2012); *Freeman v. Equifax, Inc.*, No. 6:12-845-HMH, 2012 WL 2502693 at *3 (D.S.C. June 28, 2012). *See also Owner–Operator Indep. Driver Ass'n, Inc. v. Usis Commercial Servs., Inc.*, 410 F. Supp. 2d 1005, 1007-09 (D. Colo. 2005); *White v. First Am. Registry, Inc.*, 378 F. Supp. 2d 419, 421-24 (S.D.N.Y. 2005). Others, however, have declined to do so. *See Engelbrecht v. Experian Information Services, Inc.*, No. EDCV 12-01547 VAP, 2012 WL 10424896 at *3-*5 (C.D. Cal Nov. 6, 2012); *Harris v. Experian Information Services, Inc.*, No. 6:06-cv-01808-GRA, 2007 WL 1863025 at *3 (D.S.C. June 26, 2007). One such court identified the concern that "a consumer without the right to bring a claim for injunctive relief would be helpless to correct her credit information." *Engelbrecht*, 2012 WL 10424896 at *5.

Thus, there is no consensus on this question in the federal courts, and the United States Court of Appeals for the Fourth Circuit has yet to decide the issue. For the reasons set forth below, Alston's Motion fails on the merits, and so can be disposed of on that basis alone. Like

the Sixth Circuit, therefore, this Court will leave answering the question of whether a private litigant can seek injunctive relief under the FCRA for another day.

## II. The Motion for a Preliminary Injunction

The purpose of a TRO or a preliminary injunction is to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). A preliminary injunction is distinguished from a TRO only by the difference in notice to the nonmoving party and by the duration of the injunction. *U.S. Dep't of Labor v. Wolf Run Mining Co.*, 452 F.3d 275, 281 n. 1 (4th Cir. 2006) (comparing Fed. R. Civ. P. 65(a) with Fed. R. Civ. P. 65(b)). The substantive standards for granting a TRO or a preliminary injunction are thus identical.

To obtain a TRO or a preliminary injunction, plaintiffs must establish that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). Because a preliminary injunction is "an extraordinary remedy . . . [it] may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

Prior to 2009, the Fourth Circuit followed a "balance of hardship" approach to preliminary injunctions, considering all four *Winter* factors, but "allow[ing] each requirement to be conditionally redefined" in a "flexible interplay" depending on how the other requirements were met. *See Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009) (citing *Blackwelder Furniture Co. of Statesville v. Seilig Manufacturing Co.*, 550 F.2d

189, 196 (4th Cir.1977)). However, *Real Truth* invalidated this approach, and it "may no longer be applied" in the Fourth Circuit. *Id.* As a result, a plaintiff must satisfy each requirement as articulated. *Id.*

### A. Factor 1: Clear Showing of the Likelihood of Success on the Merits

To meet the first requirement, plaintiffs must "clearly demonstrate" that they "will *likely succeed* on the merits," rather than present a mere "grave or serious question for litigation." *Real Truth*, 575 F.3d at 346-347 (emphasis in original). Alston's underlying claim spans a number of years and a number of credit reports, so to determine if she fulfills this requirement, it is essential to clarify precisely what credit reporting Alston seeks to enjoin. The issue presented by her Motion is whether Equifax is *currently* inaccurately reporting Alston's mortgage account, and, if so, whether it should be enjoined from doing so. Even if Equifax inaccurately reported that account in the past, as Alston alleges, those now outdated, superseded credit reports cannot be subject to a preliminary injunction. Notably, the specific relief Alston seeks in her Motion is an injunction "ordering [Equifax] to cease reporting the Plaintiff's mortgage account as over 120 days late." Mot. at 4. In order to succeed on her Motion, therefore, Alston must clearly demonstrate that she will likely succeed on her claim that Equifax's current report of her mortgage account is inaccurate. She fails to carry this burden.

Alston notes that, as of June 2014, Equifax was reporting: (1) that her mortgage had no late payments for August, September, and October 2011, but also (2) that the "Status" of the account was "Over 120 Days Past Due." *See* Mot. at 2, Ex. 1. "Clearly," Alston argues, she "cannot be Current on all h[er] payments and still be 'Over 120 Days Past Due.'" Mot. at 2. Because of this supposed patent discrepancy, Alston concludes that "Equifax must delete the account information as inaccurate or unverifiable." *Id.*

8

Alston's argument assumes that the "status" of the account refers to the *current* state of her payments. The June 2014 Equifax report, attached to the Motion as Exhibit 1, is unhelpful in this respect, nowhere explaining what "Status" means. However, at the hearing, counsel for Equifax clarified that the notation "Status—Over 120 days past due" does not refer to the current status of the account, but rather designates that at a prior time, the account was over 120 days past due. November 3, 2014 Hearing at 3:28 p.m. and 3:44 p.m., *Alston v. Equifax* (TDC-13-1230) and *Alston v. Trans Union, et al.* (TDC-14-1180). Considering the report as a whole, this interpretation is entirely reasonable. Because the report also states that the account had been "transferred/sold" in November 2011 and that it had a balance of $0 and a "past due" amount of $0, Mot. at 2, Ex. 1, the report makes clear that Alston is no longer late on payments that she is currently obligated to make. Thus, it is more likely that the "Status—Over 120 days past due" reference is intended to alert potential creditors that Alston had been over 120 days past due at some point during the history of the loan.

Alston effectively admits as much, because she acknowledged that in August 2011, Wells Fargo and Monarch both informed her that she was $6,492.24 arrears on her mortgage, a balance indicating that she was eight months behind on her payments. Mot. at 1. She further acknowledged that in that same month, she submitted a cashier's check to Monarch for that entire amount. Id. at 1-2. One can reasonably infer from the fact that Alston submitted a check for that lump sum balance that she was indeed $6,492.24—or 8 months—in arrears on her mortgage in August 2011.[2] Thus, there is a strong likelihood that the "Status" section of the

---

[2] The record developed in another of Alston's cases—one against Trans Union and Experian for their reporting of this same Wells Fargo account—supports this conclusion and also raises a question whether that $6,492.24 payment was validly made. *See* Memorandum Opinion, *Alston v. Trans Union, et al.*, No. TDC-14-1180 (D. Md. Nov. 13, 2014).

report records the prior payment history of the account, not the current account status, and that the report is therefore accurate.

Alston thus cannot show that she is clearly likely to succeed on the merits of her claim that Equifax continues to report that account inaccurately. Because Alston fails to establish her likelihood of success on the merits, she is not entitled to a preliminary injunction. *See Real Truth*, 575 F.3d at 347. The Court thus touches on the remaining factors only briefly.

### B. Factor 2: Likelihood of Irreparable Harm

To establish irreparable harm, plaintiffs must show that they are "likely to be irreparably harmed," not just that they face a mere possibility of harm. *United States v. South Carolina*, 720 F.3d 518, 533 (4th Cir. 2013). Thus the "irreparable harm" to be suffered must be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)). Here, Alston argues that she faces irreparable harm because the allegedly inaccurate information on her credit report will prevent her from securing a mortgage on a property she has identified for purchase. Alston may well be unable to secure a mortgage as a result of her credit report, but she has not demonstrated that any such denial would be the consequence specifically of Equifax's alleged inaccurate reporting. The record instead strongly suggests that the derogatory information reported about the Wells Fargo account is accurate, and therefore that any denial of credit would be the consequence of Alston's own financial dealings. Alston therefore fails to establish that she is at risk of "actual and imminent" harm as a result of Equifax's alleged inaccurate reporting. *Id.*

### C. Factors 3 and 4: The Balancing of Equities and the Public Interest

The remedy Alston seeks is for this Court to require Equifax to "cease reporting the Plaintiff's mortgage account as over 120 days late." Mot. at 2. The FCRA was designed to ensure the continued and optimal functioning of the banking system, which depends on "fair and accurate credit reporting" that will enable financial institutions to determine the creditworthiness of consumers. 15 U.S.C. § 1681(a)(1). Given that a reasonable interpretation of the record is that Alston was at one point at least 120 days late in paying her mortgage, Equifax's report to that effect is certainly information that speaks to Alston's creditworthiness. By asking this Court to have Equifax delete this information at this stage of the proceedings, which would leave the report without any record of that extended period of non-payment, Alston would frustrate the purpose of the FCRA. Thus, the equities and the public interest weigh against a preliminary injunction.

### CONCLUSION

For the foregoing reasons, Alston's Motion for a Preliminary Injunction is denied. A separate order follows.

Date: November 13, 2014

THEODORE D. CHUANG
United States District Judge